**Electronically Filed**
**Intermediate Court of Appeals**
**30141**
**08-AUG-2011**
**07:48 AM**

NO. 30141

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JUAN CASTRO, JR., aka Kalani, Defendant-Appellant,
and JAYNE ORAVEC, aka Jayne Heater, Defendant.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 06-1-2393)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Juan Castro, Jr. (Castro), aka "Kalani," appeals from the Judgment filed on October 22, 2009, in the Circuit Court of the First Circuit (circuit court). Plaintiff-Appellee State of Hawai'i (State) charged Castro by grand jury indictment with one count of Methamphetamine Trafficking in the First Degree in violation of Act 230, Section 4, Session Laws of Hawaii, Regular Session of 2006 (later codified as Hawaii Revised Statutes (HRS) § 712-1240.7 (Supp 2006)).[1] After a jury trial, Castro was found guilty as charged,

---

[1] HRS § 712-1240.7 provides, in pertinent part, as follows:

**Methamphetamine trafficking in the first degree.** (1) A person commits the offense of methamphetamine trafficking in the first degree if the person knowingly:

(continued...)

and the circuit court sentenced Castro to a term of twenty years imprisonment with a mandatory minimum of two years. Castro filed a timely Notice of Appeal on October 29, 2009.

On appeal, Castro asserts the circuit court erred by: (1) admitting into evidence Exhibits 1 through 20, audio recordings which include taped phone conversations, that deprived Castro of his constitutional right to confront witnesses; (2) admitting into evidence Exhibits 1 through 20 over Castro's objections on grounds of relevance and surprise; (3) admitting into evidence Exhibit 21, an audio recording, over Castro's objection on grounds of relevance; (4) instructing the jury that it could consider evidence, including Exhibits 1 through 20, on the issue of Castro's state of mind as to the conduct charged; and (5) committing plain error in allowing the prosecutor to make an improper closing argument.

We conclude that Castro's right under the Hawaiʻi Constitution to confront witnesses was violated by the admission of the audio recordings of telephone calls between an undercover police officer and witnesses who did not testify at trial, where the State made no showing that the witnesses were unavailable. The admission of these recordings was not harmless error and therefore we vacate the judgment and remand for a new trial.

_____

[1](...continued)
    (a)  Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of one ounce or more containing methamphetamine or any of its salts, isomers, and salts of isomers;
    (b)  Distributes one or more preparations, compounds, mixtures, or substances of an aggregate weight of one-eighth ounce or more containing methamphetamine or any of its salts, isomers, and salts of isomers; . . .

## I. BACKGROUND

Castro was indicted by a grand jury and charged as follows:

> On or about the 6th day of July, 2006, in the City and County of Honolulu, State of Hawaii, JUAN CASTRO JR., also known as Kalani did knowingly distribute one or more preparations, compounds, mixtures, or substances of an aggregate weight of one-eighth ounce or more containing methamphetamine or any of its salts, isomers and salts of isomers, thereby committing the offense of Methamphetamine Trafficking in the First Degree, in violation of Act 230, Section 4, Session Laws of Hawaii, Regular Session of 2006.

The charges stem from a drug deal that took place on July 6, 2006. In the days prior to July 6, 2006, an undercover officer with the Honolulu Police Department (HPD) posed as a drug dealer named "Rocky" (undercover officer, officer, or Rocky) and contacted Clinton Kalani Smith, who was known as "Kim Chee" (Smith or Kim Chee), to purchase one ounce of crystal methamphetamine. Kim Chee was in the hospital and unable to complete the transaction, so he referred Rocky to co-defendant Jayne Oravec (Jayne).[2] Over the course of several days, there were multiple telephone conversations between Rocky and Jayne. There were also telephone conversations between Rocky and Kim Chee. As a result of these multiple telephone contacts, Rocky and Jayne arranged to meet on July 6, 2006 to complete a drug transaction. According to Jayne's telephone conversations with Rocky, she and Rocky were to meet with a person who would deliver the crystal methamphetamine. Appellee State contends that the meeting occurred on July 6, 2006 and that, in exchange for $3,200, Appellant Castro delivered 28.1 grams of crystal methamphetamine to Rocky.

The undercover officer recorded his telephone conversations with Kim Chee and Jayne. These taped conversations

_____

[2] Co-defendant Oravec pleaded guilty on July 11, 2007 and did not proceed to trial in this case.

3

are part of Exhibits 1 though 20. The undercover officer also recorded the conversations during the meeting on July 6, 2006, which was admitted as Exhibit 21.

A.    **Pretrial Motion to Exclude Evidence**

On June 19, 2008, Castro filed a "Motion to Exclude Use at Trial of Certain Evidence" (Motion to Exclude), seeking to prevent the introduction of the tape recorded conversations at trial as inadmissible hearsay. After a hearing on August 1, 2008, the circuit court denied the motion and, on July 29, 2009, entered the following findings of fact and conclusions of law (Findings and Conclusions):[3]

FINDINGS OF FACT

1.    Between July 5, 2006 and July 6, 2006, [the undercover officer] had several recorded conversations with Co-Defendant Jayne Oravec (hereinafter "Oravec") and an individual named Clinton Kalani-Smith (hereinafter "Kalani-Smith") pursuant to the undercover drug buy operation which gave rise to the above-captioned case.

2.    During these recorded conversations, the parties were negotiating the drug transactions charged in the above entitled case and discussing the logistical details of those transactions.

3.    The State does not intend to call Oravec or Kalani-Smith as witnesses at trial.

4.    Defendant Juan Castro, Jr., in his motion, sought an order excluding these recorded conversations as testimonial hearsay.

CONCLUSIONS OF LAW

1.    In order for proffered evidence to be excluded by the general rule on hearsay it must be 1) an out of court statement, and 2) offered for the truth of the matter asserted. See HRE Rule 801 & 802.

2.    As the recorded conversations consist of the parties negotiations regarding the drug transactions charged in the instant case and their discussions of the logistical details of those transactions, to the extent the recordings contain out-of-court statements, such statements are not offered for the truth of the matter asserted but rather to

_____

[3]    The Honorable Steven S. Alm presided with regard to the Motion to Exclude.

4

explain the subsequent actions of [the undercover officer] and are not hearsay. See State v. Feliciano, 2 Haw. App. 63[3] (1982).

       3.     Assuming arguendo, any statements contained in the recorded conversations could be considered hearsay, such statements were not made under circumstances which would lead an objective witness to believe the statements would be available for use at a later trial and are thus nontestimonial hearsay, not subject to the Confrontation Clause. See State v. Fields, 115 Hawai'i 503 (2007). See also State v. Grace, 107 Hawai'i 133 ([App.] 2005).

       4.     To the extent the recorded conversations contain such nontestimonial hearsay statements, these statements were made by Defendant's coconspirators during the course and in furtherance of the conspiracy and are thus vicarious admissions, admissible under HRE Rule 803(a)(2)(c).

The case proceeded to trial on July 29, 2009.[4]

B.    **Trial**

1.    **State's Case**

The undercover officer was the key witness for the prosecution. He testified that on July 3, 2006, at around 6:50 p.m., he utilized his undercover persona, Rocky, and spoke with Kim Chee about purchasing narcotics. Kim Chee informed Rocky that he was in the hospital but could still complete the transaction. In a conversation with Rocky on July 5, 2006, Kim Chee agreed to have Jayne meet Rocky to sell him one ounce of "ice" (crystal methamphetamine) for $3,200. Rocky gave Kim Chee permission to pass his number on to Jayne. Jayne and Rocky had a series of conversations which culminated with them agreeing to meet at a 7-Eleven store where Jayne's source for the drugs was nearby.

On July 6, 2006, Jayne and Rocky met at the 7-Eleven store and agreed to drive separate cars to a nearby alley, where Jayne's friend would be waiting with the drugs. They drove their respective cars through an alley to the parking lot of an apartment, where they got out of their cars. Rocky gave Jayne

---

    [4]  The Honorable Karen S. S. Ahn presided at trial.

the bundled $3,200, and Jayne talked on her phone while they were waiting for her friend to arrive.

The undercover officer testified that he noticed a large male, later identified as Castro, approaching them. Jayne indicated that Castro was "my guy" and the officer understood Castro to be the source of supply bringing the drugs. After Castro spoke with Jayne and met "Rocky," they all got into Rocky's car, with Jayne in the front passenger seat and Castro in the back seat behind Jayne. The undercover officer testified that in the car he saw Castro "with the wad of cash in his hand" and, although he did not see her do it, assumed that Jayne had handed the money to Castro. The officer testified that he observed Castro quickly skimming through the money and believes Castro put it in his pocket. Castro thereafter handed "Rocky" a cigarette pack and the officer testified that "I open the cigarette pack and I see the one ounce of ice in it."

The undercover officer initially testified that Castro had removed the cigarette pack from his pocket, but on cross-examination admitted that he did not actually see that occur. Rather, the officer testified he concluded the cigarette pack came from Castro's pocket because when Castro initially approached by walking toward his vehicle, the officer did not see anything in Castro's hands. On cross-examination, the officer also testified that, as they were getting into his vehicle, which was a Nissan Pathfinder, he walked around to the driver's seat while Jayne and Castro entered from the passenger side. During this time, for about seven or eight seconds, he lost sight of Jayne and Castro.

During the undercover officer's testimony at trial, the State played Exhibits 1 through 21 for the jury. Exhibits 1 through 19 included the recordings of telephone conversations or attempted telephone conversations that the officer as "Rocky" had

with Kim Chee and with Jayne. During some of these recordings, Jayne refers to the individual that she and Rocky need to meet to get the drugs, referring to this person as "my guy" or "my friend." Jayne also indirectly indicates in the recordings that this is someone who she has dealt with in the past.

In Exhibit 20, the undercover officer identifies himself and explains that it is July 6, 2006 at approximately 4:15 p.m., and that he is headed over to the 7-Eleven store on South King Street to meet with Jayne to complete a one ounce ice deal with her.

Exhibit 21 is an extensive recording of the meeting on July 6, 2006, starting initially with Rocky and Jayne meeting at the 7-Eleven parking lot and then driving separately to a nearby location to meet another individual to complete the transaction. The undercover officer testified that the other voices on this recording were Jayne and Castro.[5]

After the tapes were played for the jury, the court gave the jury a limiting instruction, advising them as follows:

> During this trial, you may have heard evidence that the defendant allegedly may have committed some act or acts other than what is charged in the indictment in this case. You may consider this evidence, if it is believed by you, solely and only on the issue of the defendant's state of mind as to conduct charged in this case, and for no other purpose. You cannot consider this evidence, if it is believed by you, to show that the defendant committed any other act or acts and so is a bad person and must have committed the acts charged in this case. The defendant is on trial here only on the charge contained in the indictment in this case and for no other alleged acts.

In addition to the undercover officer, the State had two other witnesses: a detective assigned to the HPD Narcotics Vice Division, who supervised the undercover investigation in this case and took photographs of Jayne and Castro during the investigation; and a second officer, also assigned to the

---

[5] The undercover officer testified that the voices on Exhibit 21 were "[o]f course, myself, Jayne, and the defendant."

Narcotics Division, who on July 6, 2006, received from the undercover officer a cigarette pack and a ziploc packet containing a white crystalline substance. The State entered into evidence the cigarette pack (Exhibit 22), the ziploc packet containing the white crystalline substance (Exhibit 23), and photographs of Jayne and Castro taken on July 6, 2006.

The parties stipulated to, *inter alia*, the chain of custody of the cigarette pack and the ziploc packet, that the contents of the packet were tested by an HPD criminalist, that the HPD criminalist had determined the contents to contain methamphetamine with a net weight of 28.1 grams, and that one ounce is equivalent to 28.3495231 grams.

### 2. Defense Case

The defense presented two witnesses. Hector Joseph Cabregos (Cabregos), a licensed private investigator, was retained by the defense. He testified, among other things, that he was retained to take photos of Castro in the same area where Castro had been photographed during the police investigation, for the purpose of determining whether a cigarette pack could be seen in Castro's pocket. Various photos taken by Cabregos, as well as photos he had enlarged from the State's exhibits, were admitted into evidence.

The other defense witness was a third officer who participated in the police investigation. This officer was asked to identify a photograph which included the vehicle operated by the undercover officer and the photo was admitted into evidence.

### 3. Closing Arguments

In closing argument, the State relied heavily on the recorded conversations with Jayne. In addressing the evidence that Castro "distributed" an eighth of an ounce of methamphetamine, the prosecution urged the jury "to listen to the CD and listen to the different facts[.]" The prosecution pointed

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

to Exhibit 6 as showing that Jayne made a deal with Rocky to sell him an ounce of drugs, and then pointed to Exhibits 7 and 8 as showing that Jayne had called "her guy" or "her source" and confirmed that he was across the street from the 7-Eleven. The prosecution referenced Exhibits 11 and 16 regarding Rocky and Jayne's initial attempt to meet at the 7-Eleven, that Jayne was angry when there was a mix-up and she had to wait along with "her guy" who was waiting across the street. The prosecution further argues that in Exhibit 21 (the taped conversation of the meeting), Jayne confirms when Castro arrives that, in the words of the prosecution, "this is the guy." Implicitly referencing the prior taped conversations with Jayne, the prosecution argues that Jayne confirms that Castro is the guy she had called earlier in the day to do the deal and, in the words of the prosecution, "is the guy we've all been waiting for."

In addressing whether Castro acted "knowingly," the prosecution again relied on the taped conversations with Jayne. The prosecution urged the jury to "look at how [Castro] interacted with Jayne" and that Castro acted knowingly because "Rocky and Jayne are waiting, he knows they're waiting, he knows they're waiting for him to arrive." The evidence that supports these statements were the taped conversations with Jayne. The prosecution also urged the jury to "listen to Jayne's phone calls" when she was at the meeting site and calling someone on the phone, telling that person, in the words of the prosecution, that "we're waiting for you." The prosecution argued it was reasonable to conclude "from those facts and from those observations that [Jayne] was talking to the defendant on the phone."

Finally, in response to the defense's closing argument that Castro was denied an opportunity to confront Jayne and Kim Chee, the prosecution argued in rebuttal that: "The State is not

required to call Jayne, the State is not required to call Kim Chee.  You have the recordings [of] her voice, you have [the undercover officer] confirming that is her . . . that is enough."

## II.  STANDARDS OF REVIEW

### A.  Constitutional Law

"We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case . . . . Thus, we review questions of constitutional law under the 'right/wrong' standard."  State v. Fields, 115 Hawai'i 503, 511, 168 P.3d 955, 963 (2007) (citations omitted).

> Violation of the constitutional right to confront adverse witnesses is subject to the harmless beyond a reasonable doubt standard.  In applying the harmless beyond a reasonable doubt standard[,] the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction.

State v. Pond, 118 Hawai'i 452, 461, 193 P.3d 368, 377 (2008) (quoting State v. Balisbisana, 83 Hawai'i 109, 113-14, 924 P.2d 1215, 1219-20 (1996)).

### B.  Hearsay

"Where admissibility of evidence is determined by application of the hearsay rule, there can only be one correct result, and the appropriate standard for appellate review is the right/wrong standard."  State v. Fitzwater, 122 Hawai'i 354, 362, 227 P.3d 520, 528 (2010) (citations omitted).

### C.  Relevance

"A trial court's determination that evidence is 'relevant' within the meaning of HRE [Hawaii Rules of Evidence] Rule 401 (1993) is reviewed under the right/wrong standard of review."  State v. St. Clair, 101 Hawai'i 280, 286, 67 P.3d 779, 785 (2003) (citations omitted).

HRE Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence." HRE Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawai'i, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."

### III.  DISCUSSION

### A.    Constitutional Right to Confront Witnesses

Castro raises a constitutional challenge to his conviction, asserting that the circuit court's ruling that allowed admission of the undercover audio recordings deprived him of his right to confront witnesses in violation of the United States Constitution and the Hawai'i Constitution.

Both the U.S. and Hawai'i Constitutions establish the right of an accused to confront witnesses against him or her. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"); Haw. Const. art. I, § 14 ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against the accused[.]).

> The right of confrontation affords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses. For this reason, the admission of a hearsay statement as substantive evidence of its truth raises special problems whenever the hearsay declarant is unavailable for meaningful cross-examination on the witness stand.

Fields, 115 Hawai'i at 512, 168 P.3d at 964 (citations and internal quotation marks omitted).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801, Hawai'i Rules of Evidence (HRE). We conclude in this case that

11

the statements by Jayne and Kim Chee in the undercover audio recordings were offered and argued by the prosecution at trial for the truth of the matter asserted and therefore constitute hearsay statements.

As the State correctly points out, the Confrontation Clause under the U.S. Constitution does not bar the admission of *nontestimonial* hearsay. Crawford v. Washington, 541 U.S. 36 (2004); Davis v. Washington, 547 U.S. 813 (2006). Hence, the undercover audio recordings of Jayne and Kim Chee in this case may very well not be barred under the Confrontation Clause of the U.S. Constitution. See Crawford, 541 U.S. at 56 (noting that "statements that by their nature were not testimonial" included "statements in furtherance of a conspiracy."); United States v. Allen, 425 F.3d 1231, 1235 (9th Cir. 2005) ("co-conspirator statements are not testimonial and therefore beyond the compass of Crawford's holding.").

Since Crawford and Davis were decided, however, the Hawai'i Supreme Court has reaffirmed that the Confrontation Clause contained in the Hawai'i Constitution will *continue to apply to nontestimonial* hearsay and that the applicable test remains the one established in Ohio v. Roberts, 448 U.S. 56 (1980). In Fields, the Hawai'i Supreme Court noted that "we have long held that a trial court may, consistent with a criminal defendant's constitutional right of confrontation, permit a hearsay statement uttered by an unavailable declarant as substantive evidence if the statement satisfies the two-part test announced by the United States Supreme Court in *Roberts*."[6] 115

---

[6] The Roberts test as applied under the Hawai'i Constitution requires:

> As regards the first part of the *Roberts* test, we have remained resolute that, under the confrontation clause of the Hawai'i Constitution, a showing of the declarant's unavailability is necessary to promote the integrity of the
> (continued...)

Hawai'i at 512, 168 P.3d at 964. After analyzing <u>Crawford</u> and <u>Davis</u>, the court in <u>Fields</u> ruled that:

> we are disinclined to alter our application of *Roberts* to nontestimonial hearsay. *Roberts* embodies the commonsense principle that, when face-to-face cross-examination cannot be secured, extrajudicial statements are admissible as evidence of their truth *only* when demonstrably more "reliable" than the straightforward application of our rules of evidence would normally require. In our estimation, the fairness of criminal proceedings would be significantly diminished were we to renounce *Roberts* in favor of conditioning the admission of nontestimonial hearsay on the vagaries of evolving rules of evidence.
>
> We therefore reaffirm *Roberts'* continued viability with respect to nontestimonial hearsay.

<u>Fields</u>, 115 Hawai'i at 516, 168 P.3d at 968 (citation omitted).

The Hawai'i Supreme Court has also recognized the <u>Roberts</u> test as applicable in determining whether a co-conspirator's hearsay statement is admissible. <u>State v. McGriff</u>, 76 Hawai'i 148, 871 P.2d 782 (1994). That is, before reaching the question of whether the co-conspirator hearsay exception under HRE 803(a)(2)(C) applied, the supreme court in <u>McGriff</u>

---

[6] (...continued)
fact finding process and to ensure fairness to defendants....

Upon demonstrating that a witness is unavailable, under the second half of the *Roberts* test, only statements that bear "<u>adequate indicia of reliability</u>" may be admitted into evidence. "Reliability" may be shown in two ways. First, reliability may be inferred without more if it falls within a firmly rooted hearsay exception.....

Alternatively, reliability may be demonstrated upon a showing of particularized guarantees of trustworthiness. The United States Supreme Court has declined to endorse a mechanical test for determining particularized guarantees of trustworthiness under the Confrontation Clause. Instead, the Court has determined that particularized guarantees of trustworthiness must be shown from the totality of the circumstances and that the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief.

<u>Fields</u>, 115 Hawai'i at 512-13, 168 P.3d at 964-65 (emphases added) (citations, some quotation marks, brackets omitted) (quoting <u>State v. Sua</u>, 92 Hawai'i 61, 71-72, 987 P.2d 959, 969-70 (1999)).

first determined that the declarant of the hearsay statements was unavailable, as required under <u>Roberts</u>. <u>McGriff</u>, 76 Hawai'i at 156, 871 P.2d at 790.

Here, under the first part of the <u>Roberts</u> test, the State was required to show that the declarants -- Jayne and Kim Chee -- were *unavailable* to testify at trial. In ruling on Castro's motion to exclude the recorded conversations, the circuit court made a finding that "[t]he State does not intend to call Oravec or Kalani-Smith as witnesses at trial." In its answering brief, the State concedes that it did not make a showing that Jayne was unavailable, with which we agree. Further, the State also failed to show that Kim Chee was unavailable.

Therefore, we hold, under the Hawai'i Constitution, that it was error for the circuit court to deny Castro's Motion to Exclude the recorded statements by Jayne and Kim Chee. Castro contends on appeal that the improperly admitted statements were contained within Exhibits 1 through 20. We agree that, to the extent statements by Jayne and Kim Chee are contained in these exhibits, they were improperly admitted without a showing that the requirements under <u>Roberts</u> were met.

B.     **Harmless Error Analysis**

The State argues that, notwithstanding the violation of Castro's right to confront witnesses by admitting the recorded conversations, it was harmless error. The State asserts that there was overwhelming evidence that Castro knowingly transferred methamphetamine to the undercover officer because the officer saw Castro holding the $3,200 and Castro handed the officer the cigarette pack containing almost an ounce of crystal methamphetamine. The State also points to evidence that, after the exchange, Castro became suspicious and said he thought he saw a vice officer in a nearby vehicle.

14

We do not disagree that, outside of the improperly admitted recorded conversations, there is compelling evidence that Castro came into possession of the $3,200 while in Rocky's vehicle and that Castro thereafter handed Rocky the cigarette pack that contained almost an ounce of crystal methamphetamine. However, where the constitutional right of confrontation has been violated, our review regarding harmless error goes beyond simply whether there was sufficient evidence in support of the verdict.

> A violation of the constitutional right to confront adverse witnesses is subject to the harmless -beyond-a-reasonable-doubt standard. In applying the harmless-beyond-a-reasonable-doubt standard, the court is required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction.
>
> Mere sufficiency of the evidence to support the jury verdict, apart from that aspect of the case affected by the error, would not be enough.

State v. Peseti, 101 Hawaiʻi 172, 178, 65 P.3d 119, 125 (2003) (emphases added) (citations, brackets and internal quotation marks omitted); see also State v. Pokini, 57 Haw. 26, 30, 548 P.2d 1402, 1405 (1976).

The recorded statements by Kim Chee set out the terms for the price and amount of the drug transaction, and also explained Jayne's involvement. In turn, the numerous recorded statements by Jayne set out, *inter alia*, the context for how the transaction would occur, where and when Rocky and Jayne would meet, that Jayne had been in contact with "her guy" who would supply the drugs, and that Rocky and Jayne would meet with Jayne's "guy" who would be across the street from the 7-Eleven store. In sum, the recorded statements of Jayne and Kim Chee provide significant factual context for Castro's eventual appearance and involvement on July 6, 2006.

Indeed, the prosecution emphasized the recorded statements of Jayne in making its closing argument, even urging

that the jury should review certain of the exhibits with Jayne's recorded statements. The prosecution argued that Jayne's recorded statements established "facts" that show Castro "distributed" the methamphetamine and that he did so "knowingly."

Having examined the record, we conclude that there is a reasonable possibility that the erroneous admission of the recorded statements by Jayne and Kim Chee might have contributed to the jury's verdict convicting Castro. Hence, the violation of Castro's right to confront witnesses under the Hawaiʻi Constitution was not harmless error.

C.    **Relevance of Exhibits 1-20 and Exhibit 21**

In addition to his right to confront witnesses, Castro contends that Exhibits 1 through 20 were improperly admitted on the further grounds that they are not relevant.[7] We address this issue in the event, on remand, the State is able to make a showing to meet the requirements under Roberts such that Castro's confrontation rights under the Hawaiʻi Constitution do not bar admission of Exhibits 1 through 20. In this regard, we conclude that Exhibits 1 through 20 are relevant to whether Castro knowingly distributed methamphetamine of an aggregate weight of one-eighth ounce or more. HRE Rule 401.

Castro also challenges the relevance of Exhibit 21, which is the audio recording on July 6, 2006 that contains conversations initially between Rocky and Jayne, and then Rocky, Jayne and Castro. In this regard, we similarly conclude that Exhibit 21 is also relevant to whether Castro knowingly distributed methamphetamine of an aggregate weight of one-eighth ounce or more. HRE Rule 401. Castro has not challenged the

---

[7] Castro's points of error also assert that Exhibits 1 through 20 were improperly admitted on the basis of "surprise." However, Castro's opening brief contains no argument as to his contention about "surprise" and therefore this point is deemed waived. Hawaiʻi Rules of Appellate Procedure (HRAP), Rule 28(b)(7) ("Points not argued may be deemed waived.").

admission of Exhibit 21 as violating his right to confront witnesses and we express no opinion on that issue.

D. **Other Issues on Appeal**

Given our rulings above, we need not reach the other issues raised by Castro on appeal.

## IV. CONCLUSION

For the reasons stated, we vacate the circuit court's October 22, 2009 Judgment of Conviction and Sentence, and we remand this case for a new trial consistent with this opinion.

DATED: Honolulu, Hawai'i, August 8, 2011.

On the briefs:

Walter R. Schoettle
for Defendant-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge

17